IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 20-cv-02886-CMA-MEH

DIGITAL ADVERTISING DISPLAYS, INC.,

    Plaintiff,

v.

HARBOR INDUSTRIES, INC.,

    Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant's Motion for Summary Judgment, in which Defendant Harbor Industries, Inc. ("Harbor") requests judgment on the sole claim brought by Plaintiff, Digital Advertising Displays, Inc. ("DAD"). (Doc. # 20.) DAD opposes the Motion. (Doc. # 26.) For the following reasons, the Motion is granted in part and denied in part.

### I.    BACKGROUND[1]

This matter arises from a contractual dispute between the parties. (Doc. # 4 at 4.) Between 1998 and 2014, DAD and Harbor had a business relationship governed by a commissions contract. (Doc. # 10 at 2–3.) The contract provided that DAD would earn a

---

[1] Some of the facts cited in this section are disputed. The Court does not accept these facts as true for purposes of this Motion but recites them here simply to provide background.

5% commission on the gross sales of particular interactive entertainment displays (IEDs) fabricated by Harbor. (Doc. # 26 at 2.) After the IEDs were sold, however, Harbor failed to perform an accounting to calculate the commission payment due to DAD, and as a result, DAD was never paid. (*Id.* at 3.)

Nevertheless, the parties continued their business relationship, and Harbor began fabricating specific IEDs to be used by DAD for its clients starting in 2011. (Doc. # 26-3 at 2.) In November 2013, the parties met to discuss problems with some of the IEDs that Harbor had fabricated for DAD. (*Id.*) At that meeting Harbor "further assured" DAD that an accounting would be performed to calculate the value of commissions due to DAD. (*Id.*)

In July 2014, Harbor's president, Tim Parker, allegedly admitted that the IED fabrication problems the parties had discussed at the November 2013 meeting were the result of Harbor's negligence. (*Id.*) The parties agreed to a settlement whereby Harbor would provide DAD manufacturing goods and services at a value of $100,000. (Doc. # 26 at 4.) Mr. Parker emailed Jeff Storey, the owner of DAD, at 7:43 a.m. on July 7, 2014, to confirm the settlement amount of $100,000 and to resolve details of the agreement. (Doc. # 26-5 at 1.) The overdue accounting was not mentioned at that time. (*Id.*)

DAD is suing Harbor for breach of contract. (Doc. # 4 at 4.) DAD alleges, first, that Harbor breached the sales commissions contract by failing to perform an accounting and failing to make payment to DAD; and second, that Harbor breached the settlement agreement related to the mismanaged fabrication agreement by failing to

2

provide goods and services in the agreed amount of $100,000. (Doc. # 4 at 4.) Harbor now requests summary judgment on both aspects of the breach of contract claim. (Doc. # 20 at 1.) Harbor contends that (1) DAD has failed to prove that any contract exists between the parties (Doc. # 20 at 7–8) and (2) the claim is barred by the applicable statute of limitations (*id.*).[2]

## II.     LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *See id.* Conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* Once the movant meets its initial burden,

---

[2] Harbor also implies, but does not expressly argue, that it may not be the proper entity for DAD to sue. (*See generally* Doc. # 20 at 2–3 (summarizing the business-formation history of various Harbor entities)). The Court declines to address this issue. *Cordova v. Aragon*, 569 F.3d 1183, 1191 (10th Cir. 2009) ("It is not our role to sift through the record to find evidence not cited by the parties to support arguments they have not made.").

however, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id*. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Stated differently, the party must provide "significantly probative evidence" that would support a verdict in its favor. *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* Ultimately the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### III. ANALYSIS

**A.  BREACH OF SALES COMMISSIONS CONTRACT**

DAD first alleges that Harbor breached the parties' sales commissions contract. (Doc. # 4 at 4.) Specifically, DAD claims that no accounting has ever been performed, preventing DAD from collecting its 5% commission. (*Id.*) Harbor argues that this claim must fail as a matter of law because (1) DAD cannot prove the existence of the relevant contract; and (2) even if it could, DAD's breach of contract claim would nevertheless be time barred. The Court agrees with Harbor's second argument.

The parties agree that this breach of contract claim had to be brought within six years from the date the cause of action accrued. (Doc. # 20 at 10; Doc. # 26 at 3); Colo. Rev. Stat. § 13-80-103.5(a)(1). A cause of action for breach of contract accrues on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence. Colo. Rev. Stat. § 13-80-108(6). The focus of the inquiry is on the discovery of facts and not on the realization of potential causes of action. *Crosby v. Am. Fam. Ins. Co.*, 251 P.3d 1279, 1285–87 (Colo. App. 2010). Further, the plaintiff must have exercised reasonable diligence to discover the relevant facts or circumstances. *Murray v. Guideone Specialty Mut. Ins. Co.*, 194 P.3d 489, 492 (Colo. App. 2008). Reasonable diligence is determined objectively and does not reward "denial or self-induced ignorance." *Id*.

DAD's breach of contract claim is barred to the extent that it is based on the commissions contract because this claim accrued in approximately November 2013. DAD has provided an Affidavit of Jeff Storey, the owner of DAD, in which Mr. Storey states that he negotiated the commissions contract at some time between 2004 and 2008—more than ten years before DAD filed this lawsuit. (Doc. # 26-3 at 1.) Mr. Storey concedes that "the last in person meeting I had with Harbor [] regarding this commission occurred in approximately November 2013" and that he was assured that the accounting would happen soon and that he would be paid shortly thereafter. (*Id.* at 2.) Thus, shortly after the November 2013 meeting, Mr. Storey—and, by extension, DAD— was aware that Harbor had failed to meet its contractual obligation to provide an accounting, and DAD's breach of contract claim accrued at that time.

DAD argues, however, that the statute of limitations has not even begun to run. (Doc. # 26 at 3.) Specifically, Mr. Storey claims that he "was told for several years by individuals at Harbor . . . that the accounting was badly delayed" but that, because of the parties' historical relationship, he "was never concerned that Harbor would not honor its obligations to [DAD]." (Doc. # 26-3 at 1–2.) Therefore, DAD contends, it did not become aware that Harbor intended to breach the contract until much later. (Doc. # 26 at 3.) This argument is unavailing.

According to Mr. Storey's Affidavit, Harbor failed to conduct the required accounting for more than ten years after the contract was negotiated. To "never [be] concerned" by a contracting party's failure to hold up its end of a bargain for over ten years is nothing short of "denial or self-induced ignorance." *Murray*, 194 P.3d at 492. Such ignorance does not prevent the accrual of a breach-of-contract claim. *Id*. Therefore, this Court finds that the claim regarding the breach of the sales commission contract accrued in approximately November 2013.

Based on the six-year statute of limitations, November 2019 was the latest that DAD could have brought its claim for breach of contract regarding the sales commissions contract. (Doc. # 20 at 10.) DAD brought its claim on July 6, 2020, approximately eight months after the statute of limitations had expired. (Doc. # 4.) For this reason, this Court grants Harbor's request for summary judgment so far as it relates to the breach of the sales commission contract.

B.   **BREACH OF SETTLEMENT AGREEMENT**

DAD next alleges that Harbor breached a settlement agreement between the parties. (Doc. # 4 at 4.) Specifically, DAD alleges that "in or around July of 2014" the parties entered into a settlement agreement whereby Harbor agreed to provide DAD with manufacturing goods and services of up to $100,000 in value. (Doc. # 4 at 3.) According to DAD, Harbor failed to fulfill the agreement. (Doc. # 4 at 4.) Harbor now seeks summary judgment on this claim, arguing that there was never a "partnership agreement" between DAD and Harbor and that even if there was, DAD's claim is barred by the statute of limitations. (Doc. # 20 at 1.) This argument fails.

Harbor's Motion entirely fails to address DAD's allegation that there was a *settlement agreement* between the parties. Instead, Harbor focuses on an alleged breach of a "partnership agreement." (Doc. # 28 at 5.) This argument is inapposite. Whether or not there was a "partnership agreement" between the parties has no bearing on the validity of DAD's claims regarding the alleged settlement agreement. Therefore, Harbor's Motion fails with respect to the settlement agreement.

Further, even if Harbor's Motion could be construed to address the alleged settlement agreement, Harbor's argument nevertheless fails because there is evidence in the record to support DAD's claim.

A cause of action for breach of any contract accrues on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence. Colo. Rev. Stat. § 13-80-108(6). As discussed above, the parties agree that a six-year statute of limitations applies. Colo. Rev. Stat. § 13-80-103.5(1)(a).

7

The Affidavit of Jeff Storey (Doc. # 26-3) and the July 7, 2014, email from Mr. Parker to Mr. Storey (Doc. # 26-5), viewed in the light most favorable to the nonmoving party, both suggest that (1) there was a settlement agreement between the parties, and (2) that the date of the settlement was around July 7, 2014. *See Allen*, 119 F.3d at 839 (stating that the Court must view the facts in the light most favorable to the nonmoving party); *Adler*, 144 F.3d at 671 (stating the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant"); *Jaramillo*, 680 F.3d at 1269 (stating the moving party must provide "significantly probative evidence" that would support a verdict in its favor and that "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."). Specifically, Mr. Storey avers that "Tim Parker, then Harbor Industries' President acknowledged the mismanagement [of the 2011-2013 IED project] and agreed to compensate DAD for the loss. On July 7, 2014, Tim Parker commemorated our settlement via email directly to me." (Doc. # 26-3 at 2.) The July 7, 2014, email from Mr. Parker also confirms the existence of the settlement agreement. (Doc. # 26-5 at 1.) When these facts are considered in the light most favorable to DAD, it is plausible that the parties entered into the relevant settlement agreement on July 7, 2014—the date of Mr. Parker's email. *See* Colo. Rev. Stat. § 13-80-108(6). DAD filed this lawsuit on July 6, 2020 (Doc. # 4), and thus, if the agreement was made on July 7, 2014, the action is not barred by the six-year statute of limitations. *See* Colo. Rev. Stat. 13-80-103.5(1)(a). Because the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury," Harbor's

Motion for Summary Judgment as to the second part of DAD's claim, whether Harbor breached a settlement agreement between the parties, is denied. *Anderson*, 477 U.S. at 251–52.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. # 20) is GRANTED regarding the breach of the sales commissions agreement and DENIED regarding the breach of the settlement agreement.

DATED:  July 19, 2022

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge